United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

IVAN SPEED,

        Defendant.

_____/

No. CR-13-0753 EMC

**FINAL PRETRIAL CONFERENCE ORDER**

## I.   TRIAL DATE & LENGTH OF TRIAL

Jury selection and trial shall commence on May 30, 2014, at 8:30 a.m and will go until 4:30 p.m.  Monday, June 2, 2014 will also go from 8:30 a.m. until 4:30 p.m.  Other trial days shall last from 8:30 a.m. to 2:00 p.m.  Trial is dark on Thursdays, absent further order.  Breaks will be taken every 90 minutes.

## II.   PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A.    No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness.  If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections.  The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

**United States District Court**
For the Northern District of California

B.   At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial day after next.  Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C.   With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by Wednesday, May 28, 2014, at 5:00 p.m.  If any such exhibits are still objected to, both counsel shall notify the Court by May 29, 2014, at 2:00 p.m., and shall identify the exhibits at issue and the objections.  The Court will then address the dispute on the first day of trial, May 30, 2014, before any testimony begins.

D.   If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day.  The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

### III.   PROCEDURE FOR WITNESSES AT/DURING TRIAL

A.   Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness.  At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case.  No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B.   Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order.  At the end of each trial day, Counsel shall give opposing counsel notice of which witnesses will be testifying on the following day.  At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next.  For the first day of trial, the witness list shall be provided by 2:00 p.m. of the prior business day.  Witnesses may be taken out of order if necessary.  Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.   Only one lawyer for each party may examine any single witness.

**United States District Court**
For the Northern District of California

D.  If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes.  If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E.  Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court.  The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.  Witnesses shall be excluded from the courtroom until completion of their testimony.

## IV.   OTHER PROCEDURES AT TRIAL

A.  To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant).  There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.  Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances.  Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*.  Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## V.   GOVERNMENT'S MOTIONS IN LIMINE

A.  <u>Motion in Limine No. 1: Extrinsic Evidence Used for Impeachment.</u>

The government seeks to prevent Defendant from introducing exhibits or witness testimony which suggests that the government's witnesses engaged in misconduct.  Docket No. 45 at 2.

Federal Rule of Evidence 608(b) provides, in relevant part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > (1) the witness; or
> >
> > (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).  "Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity."  *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999); *see also United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009) ("[Rule 608(b)] generally prohibits the introduction of extrinsic evidence to attack the credibility of a witness."), *abrogated on other grounds as recognized in United States v. Garrido*, 713 F.3d 985 (9th Cir. 2013).

As the text of Rule 608(b) demonstrates, a party may (subject to the court's discretion) cross-examine a witness into specific prior acts of a witness when they are probative of the witness' character for truthfulness (or untruthfulness).  "Particular instances of conduct satisfying this standard will normally involve a dishonest act or false statement as employed in Rule 609(a)(2)."  4 Handbook of Fed. Evid.  § 608:4 (7th ed.); *see also United States v. Leake*, 642 F.2d 715 (4th Cir. 1981) ("Rule 608 authorizes inquiry only into instances of misconduct that are 'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement.'").  However, while a court has discretion to permit questions regarding a witness' prior acts, the cross-examining party will be stuck with the answer the witness provides – it may not follow up with extrinsic evidence.  As the Ninth Circuit has recognized in *United States v. Olsen*, 704 F.3d 1172 (9th Cir. 2013):

> Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness – subject, of course, to the balancing analysis of Rule 403.  Had Olsen's attorney's cross-examined Melnikoff about the truthfulness of his testimony in prior cases, he either would have acknowledged or denied prior questionable conduct, and counsel would have been stuck with his answers and not allowed to pursue further inquiry.  Nevertheless, the jury would have been able to assess his credibility when confronted and "to observe his demeanor when he answered the questions, which might have been telling."

*Id.* at 1184 n.4 (citations omitted); *see also United States v. Little*, No. CR08-0244 SBA, 2012 WL 2563796 (N.D. Cal. June 28, 2012) ("In other words, while Rule 608(b) allows cross-examination about specific bad acts that concern the witness's credibility, it 'forbids extrinsic evidence to prove the specific bad act occurred.'").

**United States District Court**
For the Northern District of California

Accordingly, even where counsel is permitted to inquire into prior acts of a witness which bear on the witness' character for truthfulness, it may not do so through extrinsic evidence. Improper use of "extrinsic evidence" in this context includes either the counsel reading from documents (or having the witness read from documents), even if the party does not seek to admit the documents. *See, e.g.*, *United States v. DeSantis*, 134 F.3d 760, 765-66 (6th Cir. 1998) (holding that the bar against using extrinsic evidence in Rule 608(b) was violated when witness was made to read from text of court opinion that implicated witness in cancellation of liquor license). Counsel reading from extrinsic evidence in forming questions runs afoul of Rule 608(b)'s prohibition on using extrinsic evidence to impeach a witness' character for truthfulness.

The Court further notes that extrinsic evidence may be used to establish that a witness' testimony is motivated by bias or self-interest. *See, e.g.*, *United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984) ("Evidence that happens to include prior misconduct may be admissible, however, when it is offered to show the witness' possible bias or self-interest in testifying. In such a case, the adverse party does not have to accept the witness' testimony, but may offer extrinsic evidence to rebut it." (citation omitted)); *see also United States v. Vasquez*, 635 F.3d 889 (7th Cir. 2011) ("Extrinsic evidence of a witness' bias, however, is admissible to impeach that witness and is never a collateral issue."). Accordingly, to the extent that the government seeks an order categorically barring Defendant from using extrinsic evidence for impeachment, the motion is overbroad and will be denied. Rule 608 only bars use of extrinsic evidence when used to impeach a witness' character for truthfulness – not for other purposes. *See United States v. McGee*, 408 F.3d 966, 982 (7th Cir. 2005) ("Although Rule 608(b) bars extrinsic evidence of specific instances of conduct bearing on a witness' character for truthfulness, the extrinsic evidence may still be admissible for another reason, such as impeachment for bias, contradiction, or prior inconsistent statement.").

Finally, the Court provides the following guidance with regards to using extrinsic evidence for purposes of impeachment by contradiction. Extrinsic evidence will generally not be permitted to conduct "impeachment by contradiction" of statements volunteered during cross examination. Impeachment by contradiction "permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." *Castillo*, 181 F.3d at 1132. However, the Ninth

Circuit has held that "[i]n general, a witness may be impeached by contradiction only if 'the statements in issue [have] been volunteered on *direct* examination.'" *Kincaid-Chauncey*, 556 F.3d at 932 (quoting *United States v. Green*, 648 F.2d 587, 596 n.12 (9th Cir. 1981). This distinction is based on the Ninth Circuit's observation that

> when the testimony to be contradicted is offered under cross-examination, impeachment by contradiction is far less likely to achieve its intended purpose of rooting out perjury because "opposing counsel may manipulate questions to trap an unwary witness into 'volunteering' statements on cross-examination" and because "it is often difficult to determine whether testimony is invited or whether it is volunteered on cross-examination."

*Kincaid-Chauncey*, 556 F.3d at 932-33 (citation omitted).

Neither *Castillo* nor *Kincaid-Chauncey* categorically prohibit the use of extrinsic evidence to impeach by contradiction statements offered during cross examination. *See Castillo*, 181 F.3d at 1134 ("[W]e do not hold that a bright line distinction between testimony volunteered on direct examination and testimony elicited during cross-examination must be rigidly enforces so as to exclude all impeachment by contradiction of testimony given during cross-examination."). Rather, the Court has discretion to permit impeachment by contradiction of statements offered during cross-examination if it is convinced that the statement has been truly "volunteered." *Kincaid-Chauncey*, 556 F.3d at 932; *see also Castillo*, 181 F.3d at 1134 n.1 ("We recognize that as a practical matter trial courts likely will use the bright line distinction as a rule of thumb subject to exception only in rare situations where it is clear that testimony on cross-examination was truly volunteered.").

For the foregoing reasons, Defendant will not be permitted to introduce exhibits or witness testimony seeking to establish that the government's witnesses engaged in specific acts for purposes of impeaching their character for truthfulness. Defendant may utilize extrinsic evidence, however, to impeach government witnesses for other purposes, such as by demonstrating bias or self-interest of the witness. As an example, extrinsic evidence as to the amount of money the CI received may fall into this category. Accordingly, the government's motion in limine on this point is **GRANTED** in part and **DENIED** in part.

United States District Court

For the Northern District of California

B.      Motion in Limine No. 2: *Henthorn* Inquiries into Law Enforcement Witnesses

        The government requests that Defendant be required to make "some offer of proof and offer of relevance regarding any alleged misconduct by law enforcement officers outside the presence of the jury prior to inquiring about such alleged misconduct before the jury."  Docket No. 42, at 5-6.  The government asserts that this is necessary because "allegations of improper use of force or illegal search are highly inflammatory and should not be presented to the jury."  *Id.* at 6.  Defendant objects to this request, asserting that a requirement that the "defense disclose its strategy or plans for cross-examination infringe upon Mr. Speed's Fifth and Sixth Amendment Rights."  Docket No. 53 at 2.

        In some instances, allegations of prior acts of misconduct by a law enforcement witness may have relevance regarding a law enforcement officer's character for truthfulness under Rule 608(b).  *See United States v. Jones*, 123 F. App'x 773, 775 (9th Cir. 2005) ("Cross-examination regarding conduct underlying citizen complaints about illegal searches by testifying officers would elicit relevant testimony because such conduct bears on the officers' credibility in that the complaints presumably accuse the officers of lying about the legality of their conduct.").  *But see United States v. Harris*, — F. App'x — , 2014 WL 128814 (4th Cir. Jan. 15, 2014) ("[C]ourts have rejected the notion that more general police misconduct, such as excessive force, falls within the Rule's scope. . . .  Thus, with respect to the allegations in the disciplinary records involving only brutality or excessive force, we agree with the district court that they were simply not admissible under Rule 608(b).").  Accordingly, cross-examination into alleged misconduct by a law enforcement witness may be admissible under Rule 608(b), depending on the circumstances.

        However, the Court agrees with the government that introduction of allegations of law enforcement misconduct are potentially inflammatory and run the risk of creating mini-trials that would distract from the material issues of this case, raising Rule 403 concerns.  Further, as detailed above, the admissibility of such evidence depends on the nature of the allegation and the underlying facts.  Were Defendant to inquire about alleged misconduct and the Court were to sustain an objection, the jury would still have been presented with the information, risking prejudice and impairing the government's ability to attempt to rehabilitate the witness.  See Fed. R. Evid. 103(c) & advisory committee note ("This subdivision proceeds on the supposition that a ruling which

excludes evidence in a jury case is likely to be a pointless procedure if the excluded evidence nevertheless comes to the attention of the jury.").  Accordingly, the Court will **GRANT** the government's motion in limine in part.  Defendant will be required to provide the court and government with an offer of proof and offer of relevance relating to any allegations of law enforcement into which Defendant seeks to inquire on cross-examination.  This offer of proof and offer of relevance will occur outside the presence of the jury, immediately prior to the witness in question's direct testimony.  *See* Fed. R. Evid. 103(c).[1]

C.      Motion in Limine No. 3: Referencing Information Not Admitted Into Evidence

The government's third motion in limine seeks to prevent Defendant from "introducing" information not in evidence to the jury.  Docket No. 42, at 6.  Specifically, the government seeks to preclude Defendant from making speaking objections or from reading from documents not in evidence for purposes of questioning a witness or refreshing recollection.

The government's motion in limine is **GRANTED**, and the following limitations will apply to both parties.  As to speaking objections, Defendant does not object.  Neither party will be permitted to make speaking objections.  Rather, counsel will state "objection" and will state the nature of the objection (i.e., "hearsay," "relevance," "unduly prejudicial."  If the court requires (or desires) further information or a response from the other side, it will ask.  In the absence of such an inquiry, no further statement by either side is needed or permitted.

Defendant opposes a restriction on his ability to read documents that have not been entered into evidence.  Defendant argues that reading from documents (even if not admitted) should be

---

[1] General Order 69 provides, in relevant part:

> If, after a review of the records, the defendant believes that material contained in those records is admissible either at an evidentiary hearing or at trial, the defendant shall make an appropriate *in limine* motion seeking admission of the records at issue in accordance with the schedule outlined below.  The motion shall be made under seal in order to comply with the protective order regarding the public disclosure of the records.

General Order 69, at 3.  Accordingly, to the extent Defendant seeks to admit as substantive evidence records pertaining to alleged law enforcement misconduct obtained via subpoena, he must move *in limine* for the admission of such documents.

United States District Court

For the Northern District of California

permitted because "some inadmissible documents may contain admissible facts" or a "party may want to read from a document to lay the foundation for impeachment."  Docket No. 53, at 3.  First, regardless of whether an inadmissible document contains an "admissible fact," neither party will be permitted to introduce that fact by reading from a document (as part of a question or otherwise) not admitted into evidence.  To permit such activity would, in effect, allow any party to bypass a rule of evidence preventing admission of the document by simply reading it into the record under the guise of a question.[2]  If an inadmissible document contains "admissible fact," the party's recourse is either to find an admissible document relating the same fact or calling witness who can testify to that fact.

Second, counsel reading a document to a witness for purposes of refreshment of recollection (or having a witness read aloud from such a document) is improper refreshment.  Rather, to refresh a party's recollection, counsel will follow the following process: (1) Counsel will establish that the witness no longer can recollect a fact that was, at one point, in his or her personal knowledge; (2) counsel will hand the document in question to the witness and ask him or her to silently read the document (or portion thereof) and inform counsel when he or she is finished; (3) counsel will retrieve the document and ask the witness if the writing has refreshed the witness' memory; (4) if the witness answers in the affirmative, counsel will restate the question and the witness may answer. *See* 28 Fed. Prac. & Proc. § 6184 (2d ed.).

Finally, while reading portions of a document may be used for purposes of impeachment by contradiction, a limiting instruction will be provided by the Court at the request of the opposing party and proper impeachment procedure must be followed.  Additionally, as detailed above, use of extrinsic evidence for impeachment by contradiction is generally limited to impeaching statements made on direct examination.

In conclusion, the Court will not permit counsel for either the government or Defendant to effectively testify or present information to the jury that has not been admitted into evidence.  If the parties have any doubt as to whether the form of certain questions will be permitted or use of

---

[2] Defendant has cited no case in support of its use of inadmissible documents in this way.

**United States District Court**
For the Northern District of California

1  documents will be appropriate, they shall address the matter with the Court outside the presence of

2  the jury.

3  D.    Motion in Limine No. 4: Admissibility of Rule 404(b) Evidence

4          The government's fourth motion in limine requests that this Court reserve ruling on the

5  admissibility of evidence under Rule 404(b).  Specifically, the government contends that because it

6  is unaware of the defense Defendant seeks to raise, it does not know whether (or how) evidence of

7  Defendant's prior convictions or bad acts will be relevant and admissible.  Docket No. 42, at 6-7.

8  Defendant argues that evidence of Defendant's prior acts or convictions should be excluded as the

9  government has not articulated a specific theory of admissibility.  Docket No. 53, at 4.  Further, he

10 requests that if the government seeks to admit such evidence, the Court should conduct a "Rule 104

11 hearing) and that the government "provide discovery." *Id.*

12         The government's motion in limine provides a list of prior convictions and acts by Defendant

13 that may be admissible under Rule 404(b) depending on the defense raised by Defendant.  This list

14 includes (1) five juvenile arrests for narcotics distribution, (2) a conviction for assault with a

15 firearm, (3) a conviction for possession of cocaine base, (4) an arrest for possession of cocaine base,

16 (5) an arrest for sale of a controlled substance, (6) an arrest for robbery and various firearms

17 offenses,  Docket No. 42, at 7-8.  The date of these acts range from January 2003 through May

18 2012.[3]

19         The Ninth Circuit has mandated a four-part test to determine if prior-act evidence is

20 admissible under Rule 404(b).  The evidence may be admitted if: (1) the evidence tends to prove a

21 material point; (2) the other act evidence is not "too remote in time"; (3) the evidence is sufficient to

22 support a finding that defendant committed the other act;  and (4) the act is similar to the offense

23 charged.  *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).  "Material points" for which

24 such evidence may be used include "proof of motive, opportunity, intent, preparation, plain,

25 knowledge, identity, or absence of mistake or accident."  Fed. R. Civ. P. 404(b); *see also United*

26 *States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).  Even if admissible under Rule 404(b), the

27

28         [3] At the pretrial conference, the government confirmed that this is the universe of potential
Rule 404(b) evidence which may become relevant at trial.

United States District Court

For the Northern District of California

1   evidence may still be excluded under Federal Rule of Evidence 403.  *See United States v. Bowman*,

2   215 F.3d 951, 962 (9th Cir. 2000).

3       At the pretrial hearing, Defendant argued that the juvenile adjudications for narcotics

4   distribution should be excluded under Rule 403 as the adjudications do not count as "convictions"

5   and are too remote in time.  The juvenile adjudications in question occurred approximately eleven

6   years ago  The Ninth Circuit has recognized that prior acts which occurred more than ten years prior

7   are not "too remote" for purposes of Rule 404(b).  *See United States v. Estrada*, 453 F.3d 1208,

8   1213 (9th Cir. 2006) ("Courts have allowed Rule 404(b) evidence to be admitted where ten years or

9   longer periods of time have passed.").

10      On the other hand, Rule 404(b) does not require convictions – the rule speaks of acts, and all

11  the government must show is that there is sufficient evidence to "'support a finding that the

12  defendant committed the other act.'"  *Id.* (quoting *United States v. Verduzco*, 373 F.3d 1022, 1027

13  (9th Cir. 2004)).  At the same time, because of the nature of juvenile adjudications (as opposed to

14  criminal convictions), the Court is cognizant of the risk of mini-trials developing regarding acts that

15  occurred over a decade ago.  *Cf. See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill.

16  2011) ("Prior arrests are usually inadmissible under Federal Rule of Evidence 403, which bars

17  evidence when its probative value is outweighed by its risk of prejudice . . . ."); *see also United*

18  *States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) ("Generally, evidence of an arrest

19  without a conviction is not sufficient to prove commission of an offense.").

20      To the extent the government seeks to admit these adjudications to show Defendant's

21  familiarity with cocaine, in light of the more recent drug-related acts the government has disclosed,

22  it appears that utilizing the juvenile adjudications would likely be needlessly cumulative.

23      Ultimately, however, the Court is unable to determine definitively the admissibility of the

24  "potential" Rule 404(b) evidence because the government has not proffered its theory of relevance.

25  Of course, the government (and the Court) cannot determine whether (and to what extent) any of

26  these prior acts are relevant until it is aware of the defense Defendant seeks to present.  At trial,

27  should the government seek to admit Rule 404(b) evidence, it shall make an offer of proof and

28

**United States District Court**
For the Northern District of California

1  relevance to the Court outside the presence of the jury.  The Court will rule on any objection by

2  Defendant at that point.

3  E.       Motion in Limine No. 5: Using Prior Convictions for Impeachment Purposes

4          In its fifth motion in limine, the government indicates that should Defendant testify, the

5  government will seek to introduce evidence of Defendant's two felony convictions as impeachment

6  evidence pursuant to Federal Rule of Evidence 609.  In opposition, Defendant states that he does

7  not, at this point, intend to testify.  Accordingly, the Court will not rule on this motion in limine

8  unless and until it becomes necessary to do so.

9  F.       Motion in Limine No. 6: References to Punishment

10         In its sixth motion in limine, the government seeks to prohibit Defendant from referencing

11  punishment.  Defendant does not oppose this motion.  The motion in limine is **GRANTED**.  While

12  Defendant will be permitted to stress to the jury the importance of its role and the fact that liberty is

13  at stake, he will not be permitted to reference or imply, for example, the length of any potential

14  prison term he might receive should he be convicted.

15  G.       Motion in Limine No. 7: Requiring Compliance with Fed. R. Crim. P. 16(b)

16         The government's seventh motion in limine requests an order that the Court exclude any

17  documents, objects, and reports that have not been timely disclosed under Fed. R. Crim. P. 16(b).  In

18  his opposition, Defendant states that he did not receive information regarding the government's

19  confidential informant until the evening of April 17, 2014, and that the investigation is still ongoing.

20  Docket No. 53, at 5.  Specifically, Defendant asserts that the Defense's drug retest and interview of

21  the confidential informant have not yet been scheduled.  *Id.*  He states that when the "investigation is

22  complete, the defense will know what evidence it intends to present at trial and will make all

23  required disclosures in a timely manner."  *Id.*

24         On May 13, 2013, the Court issued an order requiring the government to produce certain

25  documents from the confidential informant's file in this matter by Monday, May 19, 2014 at 12:00

26  noon.  Docket No. 74.  At the pretrial hearing, the Court ordered Defendant to inform the

27  government regarding which, if any, of those documents he will seek to use at trial by Thursday,

28

United States District Court

For the Northern District of California

1    May 21, 2014 at 5:00pm.  Because no exclusion of evidence for failure to comply with Federal Rule

2    of Criminal Procedure 16(b) is required at this time, the government's motion in limine is **DENIED**.

3    H.    Motion in Limine No. 8: Evidentiary Basis for any Affirmative Defenses

4          In its final motion in limine, the government seeks an order requiring Defendant to provide

5    some evidentiary basis for any affirmative defense Defendant seeks to assert.  Docket No. 42, at 9-

6    10.  In his response, Defendant asserts that he is "unaware of any affirmative defense to the

7    charges," but nonetheless objects to any order that would require it to disclose its defense prior to

8    trial.  Docket No. 53, at 5.  The government's motion is **DENIED in part**.  The Court will not

9    require Defendant to provide an offer of proof as to any affirmative defense in prior to trial.  Rather,

10   if the government objects to a line of questioning by Defendant as irrelevant, Defendant may be

11   required to make an offer of proof at that time outside the presence of the jury.

12                        **VI.    DEFENDANTS' MOTIONS IN LIMINE**

13   A.    Motion in Limine No. 1: Exclude Various Drug-Related References

14         Defendant seeks an order precluding the government from introducing evidence regarding

15   "Operation Safe Schools" or from making references about children walking past drug dealers on the

16   way to school, the Tenderloin being an alleged "open-air drug market," or the case being about the

17   well-being of children/safety of school and the like.  Docket No. 45, at 6.  The government has

18   indicated it generally does not oppose the motion.  However, the government indicates it intends to

19   offer evidence that San Francisco City Academy is a private elementary school that is located within

20   1,000 feet of the alleged drug transaction – an element of the offense.  Docket No. 54, at 2.  Further,

21   the government asserts that if Defendant opens the door to evidence regarding Operation Safe

22   Schools, it will respond with evidence regarding the operation.

23         Defendant's motion is **GRANTED**, without prejudice.  As things currently stand, the Court

24   concludes that the inflammatory risk of such arguments or evidence creates a risk of unfair prejudice

25   that substantially outweighs the probative value of such evidence.  If, however, Defendant opens the

26   door to such evidence by making arguments which makes the government's or law enforcement's

27   motives relevant, the Court will revisit this ruling.

28

**United States District Court**
For the Northern District of California

B.      Motion in Limine No. 2: Prior Act Evidence Under Rule 404(b)

*See supra* discussion regarding governments Motion in Limine No. 4.

C.      Motion in Limine No. 3: Preclude Evidence Re: Gangs or Housing Projects

In his third motion in limine, Defendant seeks to preclude the government from introducing evidence or referencing gangs or the fact that Defendant has lived in housing projects.  The government does not oppose this motion in limine.  Defendant's third motion in limine is **GRANTED**.  *See Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004) ("Our cases make it clear that evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error.  Evidence of gang membership may not be introduced, as it was here, to prove intent or culpability.").

D.      Motion in Limine No. 4: Preclude Evidence Regarding Defendant Being Shot

In his fourth motion in limine, Defendant seeks to preclude the government from referencing the fact that Defendant has been shot, his injuries, or that Defendant leads an allegedly violent lifestyle.  Docket No. 45, at 11.  The government does not oppose this motion.  Defendant's fourth motion in limine is **GRANTED**.

E.      Motion in Limine No. 5: Preclude Evidence Regarding Law Enforcement Officers' Prior Interactions with Defendant

In his fifth motion in limine, Defendant seeks to preclude the government from introducing evidence suggesting that the law enforcement officers who investigated the underlying offense had prior interactions with, or knowledge of, Defendant.  Docket No. 45, at 12.  The government responds that it generally does not object to this motion, but that such evidence may be relevant to the extent such evidence is relevant to establish a basis for the law enforcement officer's identification of Defendant.  At the pretrial hearing, Defendant indicated he will not be arguing or eliciting testimony that Defendant was misidentified by law enforcement.  Similarly he indicated he will not be arguing that he is not the individual in the video of the underlying events or any other claim of misidentification.  In light of Defendant's representation, Defendant's fifth motion in limine is **GRANTED**.

**United States District Court**
For the Northern District of California

F.     Motion in Limine No. 6: Preclude Evidence Regarding "Typical" Drug Deals or Identification of Defendant from the Video.

In his sixth motion in limine, Defendant seeks to preclude the government from eliciting testimony that the alleged conduct forming the basis of the instant charges was a "typical drug deal" or the like. Docket No. 45, at 13. Further, Defendant seeks to preclude the government from eliciting witness testimony that purports to identify Defendant from the video of the alleged transaction. *Id.* at 15. The government does not oppose the motion to the extent it seeks to prevent evidence or testimony about a "typical drug deal."

Regarding the identification of Defendant from the video of the underlying events, Defendant's identity as the individual on the video, the witness through whom the government seeks to authenticate the video may identify the defendant as an incident of that authentication. In light of Defendant's representation that he will not be contending that it is not him in the video, there is little reason for additional witnesses to identify Defendant as the man depicted or any extended testimony thereon. Repeated identifications of Defendant would be needlessly cumulative and is therefore properly excluded under Federal Rule of Evidence 403. Accordingly, Defendant's sixth motion in limine is **GRANTED**.

G.     Motion in Limine No. 7: Preclude Hearsay Statements Regarding Placement of Law Enforcement/Surveillance Testimony

Defendant's seventh motion in limine seeks to prevent the government from offering hearsay statements regarding the fact that law enforcement officers maintained constant visual contact with the confidential informant or that he was continuously monitored during the controlled buy operation. Docket No. 45, at 15-16. The government does not oppose this motion, but rather asserts that the testimony it proffers will either be non-hearsay or subject to an exception. The Court cannot rule on this motion without hearing the challenged statements. Accordingly, the court will defer ruling on this motion until trial.

H.     Motion in Limine No. 8: Preclude Evidence Not Disclosed Prior to the Discovery Cutoff

Defendant's eighth motion in limine requests that the Court set a discovery cutoff date and that it exclude all evidence not produced by the government prior to the discovery cutoff. Docket

No. 45, at 16.  The government objects to this request, asserting that it has provided all evidence it has in its possession under Rule 16(a), that defendant has not provided anything to the Government despite a request for reciprocal discovery, and that it is possible Defendant could open the door to specific evidence in its case-in-chief.

Defendant's motion is **DENIED**.  In light of the Court's schedule regarding disclosure of certain documents from the confidential informant's file and for the reasons stated on the record at the pretrial conference, the Court finds establishing a discovery cutoff to be unnecessary at this time.

I.       Motion in Limine No. 9: Permit Defendant to Dress in Civilian Clothes

Defendant's ninth motion in limine seeks permission for Defendant to dress in civilian clothes during the trial.  Defendant has indicated he can supply his own civilian clothing. Defendant's motion is **GRANTED**.

J.       Motion in Limine No. 10: Exclude Witnesses from the Courtroom

Defendant's final motion in limine seeks to exclude witnesses from the courtroom during the trial.  Defendant's motion is **GRANTED**.

## VII.    WITNESSES & EXHIBITS

Defendant has indicated that, as of this time, he does not intend to call any witnesses to testify in his case-in-chief.  Docket No. 47.

The government has proffered a witness list of 17 witnesses.  Included in this list is one United States Deputy Marshal and nine San Francisco Police Department witnesses who will all testify about "conducting surveillance of the October 9, 2013 controlled purchase of narcotics" from Defendant.  Docket No. 39.  The government is advised that the Court will not permit cumulative evidence.  Accordingly, the government shall ensure that duplicative testimony from these witnesses is not offered.  The government will inform Defendant as soon as possible of the narrowed list of witnesses it will call.

The parties have submitted a joint exhibit list consisting of 18 exhibits, thirteen of which are photographs of the area in which the alleged controlled sale occurred.  Defendant has proffered no exhibits, and does not object to any of the exhibits proffered by the government.  Defendant has, however, raised the concern that the photographs of the area may be cumulative.  The government

United States District Court

For the Northern District of California

responds that cumulative photographs will be removed once it is in a position to evaluate the quality of enlargements.  Docket No. 40.

### VIII.   JURY VOIR DIRE

Both parties have submitted proposed questions for voir dire.  (Docket Nos. 104, 119).  The Court intends to begin voir dire by asking the jurors for the following information:

1. Name

2. City of Residence

3. Occupational Status

4. Educational Background

5. Organizations

6. Hobbies

7. Marital Status

8. Spouse's Occupation

9. Children (including ages)

10. If a Juror on Another Case

11. If Ever a Grand Juror

12. If Ever in the Military

The Court will also ask whether the jurors know the attorneys involved in this case, the Court or the Court's staff, the witnesses who may be called, or the subject matter of the case.  In addition, the Court will ask the jurors the following questions based, in part, on the parties' submissions:

1. Are any of you personally familiar with the San Francisco City Academy, which is a private elementary school located on 230 Jones Street in San Francisco?

2. Have you, any member of your family, or any close personal friend, ever been arrested or charged with a drug-related offense?  If so, what were the circumstances?

3. Have you, any members of your family, or close friends worked in law enforcement (either local, state, or federal)?

4. Have you, any member of your family, or any close personal friend, ever had any contact with a law enforcement officer, other than a routine traffic stop?  Has that

**United States District Court**

For the Northern District of California

17

experience caused you any feelings regarding law enforcement that would make it difficult for you to be a fair an impartial juror towards the government or the defendant?

5.    Have you, any member of your family, or any close personal friend ever made a complaint against a law enforcement officer or against a police department?  If so, what was the nature of the complaint?

6.    You may hear testimony in this case from law enforcement officers, specifically special agents with the Drug Enforcement Administration ("DEA") or officers from the San Francisco Police Department.  Do you have any opinion regarding the DEA or the SFPD that would prevent you from serving as a fair and impartial juror towards the government or the defendant?

7.    Would you have any tendency to believe or disbelieve the testimony of a law enforcement officer more than other witnesses?

8.    Do any of you have any strong feelings, one way or the other, about the laws in the United States criminalizing the distribution of drugs?

9.    Does anyone have strong feedings, one way or the other, abut the federal government enforcing the controlled substance laws?  Does anyone believe that the federal government should not play a role in enforcing controlled substances laws?  If so, are you able to put those feelings aside and adjudge this case solely on the evidence presented and the instructions of the Court?

10.   This case involves evidence that the government used an informant to assist in its investigation.  The informant was compensated for his work assisting law enforcement.

        a.    Do you believe it is unfair for law enforcement to use undercover operations in order to enforce criminal laws?

        b.    Do you believe it is wrong for an undercover informant to make drug purchases?

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

       c.      Would you tend to believe the testimony of a person any more or less, simply because he or she was paid to assist in an undercover operation?

11.    Do any of you have any personal connection with or strong feelings about the Tenderloin neighborhood of San Francisco?  With such connections or feelings undermine your ability to be fair and impartial in this action?

12.    In our system of justice, defendants are presumed innocent until proven guilty.  There is a substantial difference between the burden of proof in a criminal trial and the burden of proof in a civil trial.  In a civil trial, the plaintiff must prove all of the essential facts by a preponderance of the evidence, which means that a jury can find for a plaintiff if the weight of the evidence favors the plaintiff even slightly.  In a criminal trial, however, the prosecution must prove all the essential facts beyond a reasonable doubt – a higher evidentiary standard.  Do any of you think that you would have any difficulty in applying the beyond a reasonable doubt standard in this case?

13.    Do you believe that a defendant in a criminal trial should have to prove his/her innocence, even if the law does not require it?  If yes, please explain.

14.    Under our Constitution, a defendant is presumed innocent, meaning that the government has to prove that the defendant is guilty beyond a reasonable doubt, and the defendant has no obligation to testify or put on any evidence.  Do you have any difficulty with the fact that a defendant in a criminal case (such as Mr. Speed) is not required to testify because the burden of proof rests with the prosecution?

15.    There are some people who, for moral, ethical, or religious reasons, believe that it is not proper, or would find it difficult, to pass judgment on the conduct of others.  Do you hold such believes or might you be affected by such beliefs?

16.    You should not speculate about the possible punishment if the defendant is found guilty.  While it is natural to wonder what might happen as a result of your verdict,

**United States District Court**
For the Northern District of California

1    will you be able to perform your duty as a juror without regard to the possible

2    punishment of the defendant if he is found guilty?

3    17.    It is your duty as a juror to listen to the opinions and points of view of the other

4    members of the jury.  Would any of you refuse to listen to a fellow juror who

5    disagreed with you?

6    18.    Do you understand that as a juror you must accept and apply the law as it is explained

7    to you by the Court – even if you believe the law is or should be different?  Do you

8    have any difficulty with this concept that would prevent you from serving as an

9    impartial juror in this case?

10    19.    It is also your duty as a juror to express your opinion or point of view regarding the

11    evidence to the other members of the jury.  Is there anyone who would be unwilling

12    to speak up and try to persuade other members of the jury who disagreed with your

13    view of the evidence?

14    20.    Have any of you seen or heard anything outside of this courthouse, or in the corridors

15    of this building, or in this courtroom that might have any influence on your verdict in

16    this case?

17    21.    Knowing what you now know about this case, do you have any reservations about

18    your ability to hear the evidence, deliberate and return a fair and impartial verdict?

19    22.    Is there anything about yourself or your beliefs and attitudes that have not yet been

20    discussed that would prevent you from serving as a fair and impartial juror in this

21    case?

22    In addition to the above questions, each party will be provided additional time (20 minutes)

23    to conduct its own voir dire.

24    ///

25    ///

26    ///

27    ///

28    ///

20

# IX.   JURY INSTRUCTIONS & JURY VERDICT FORM

The parties have submitted a joint statement containing a list of proposed jury instructions. (Docket No. 37).  The Court shall file shortly hereafter proposed jury instructions.  **The parties shall provide comments on the instructions on a date to be specified**.

This order disposes of Docket Nos. 42 and 45.

IT IS SO ORDERED.

Dated:  May 15, 2014

_____
EDWARD M. CHEN
United States District Judge